IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HOLLY LEICHTMAN,

Plaintiff,

v. Case No. 25-2113-JWB

EVERSANA LIFE SCIENCE SERVICES, LLC
and INTOUCH GROUP, LLC,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion to dismiss. (Doc. 11.) The motion has been fully briefed and is ripe for decision. (Docs. 12, 17, 18.) The motion is GRANTED IN PART and DENIED IN PART for the reasons stated herein.

## I. Facts

The facts set forth herein are taken from the state court pleading (referred to as the complaint). (Doc. 1-1.) Plaintiff is a female and over the age of 40. Plaintiff began working for Defendants in 2014 as a contractor. At some point, Plaintiff was hired as a permanent employee and was later promoted to quality assurance lead. She consistently received positive performance reviews. Plaintiff suffers from Ehlers-Danlos Syndrome, a genetic disease affecting her skin and joints, chronic migraines, and Paroxysmal Supraventricular Tachycardia (PSVT), a condition that causes her heart to race unexpectedly. PSVT can be triggered by anxiety and stress. (Doc. 1-1 at 5–6.)

Plaintiff was subjected to a drastic increase in her workload during the COVID-19 pandemic. Plaintiff alleges that she worked up to 74 hours a week at this time. At some unknown

point, she suffered a panic attack. She told her supervisor, Mr. Terry, about the episode. She also asked him for help due to the stress she was under. Her supervisor told her that he was working on it but her workload did not decrease. At some other point in time, she again requested help from Mr. Terry and Chad Young, another management-level employee. Plaintiff was again told that she would receive help and Defendants would hire more people. Plaintiff does not allege when this occurred although she indicates that she had been asking for help for two years. (*Id.* at 6–8.)

In September 2022, Plaintiff discovered that Mr. Terry had not requested additional employees. Defendants had hired several new contractors but they were not assigned to the Dupixent account, which was Plaintiff's main account, or to assist Plaintiff with her workload. When Plaintiff discovered this, she emailed Michael Blake, the vice president of quality services and the Dupixent team. Plaintiff told Blake that her workload was impossible and was causing her stress. (*Id.* at 9.)

On October 3, 2022, Plaintiff took short term disability leave to recuperate her health and recover from the stress from her work. Defendants initially approved her leave. In late December, however, Plaintiff received an email from human resources stating that Plaintiff was to return to her position or they were going to assume she abandoned it. Plaintiff cut her medical leave short and returned to work. (*Id.* at 10.)

Upon her return, Plaintiff learned she was no longer on the Dupixent account and was assigned to the Takeda account. The Takeda account needed more work than the Dupixent account. Again, Defendants did not provide Plaintiff with any assistance. The individual previously assigned to the account had told Defendants that the Takeda account was too large for one employee to handle. Plaintiff again asked for assistance and her pleas were ignored. She

worked close to 80 hours a week experiencing extreme stress and migraines. Plaintiff began taking PTO throughout 2023 to deal with her medical conditions. (*Id.* at 11.)

On September 27, 2023, Mr. Terry and Defendants issued Plaintiff a performance improvement plan ("PIP"). Plaintiff and Mr. Terry had a zoom call regarding the PIP during which Mr. Terry informed Plaintiff that the PIP was issued due to tardiness. He further told her that she was taking too much sick time and PTO. Plaintiff was told to arrive at work at least thirty minutes prior to her start time. Plaintiff asserts that she has never been tardy to work and that this was the first time she had been disciplined. (*Id.* at 11–12.)

On October 23, 2023, Plaintiff was terminated. Plaintiff was told that she was terminated due to a reduction in force. Plaintiff does not believe that any other employee was terminated. On April 10, 2024, Plaintiff filed a charge of discrimination with the Kansas Human Rights Commission and the EEOC. (*Id.* at 23–31.) Plaintiff then filed this action against Defendants alleging claims of age, sex, and disability discrimination and retaliation in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA").

Defendants now move to dismiss Plaintiff's complaint on the basis that she fails to state a claim.[1]

## II. Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its

[1] Defendants filed a motion to dismiss or, in the alternative, for a more definite statement. In addition to seeking dismissal for failure to state a claim, Defendants sought dismissal on the basis of exhaustion because Plaintiff did not plead any facts regarding her EEOC right to sue letter. In response to the motion, Plaintiff attached the letter and indicated she filed suit within 90 days of receipt of that letter. Defendants have now withdrawn their argument pertaining to exhaustion and their request for a more definite statement as a result of Plaintiff's response. (Doc. 18 at 2, n.1.)

face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. Analysis

### A. Age and Sex Discrimination

Plaintiff claims that her differential treatment, discipline, and discharge were motivated by age and sex discrimination. "Where, as here, a Title VII plaintiff relies on indirect or circumstantial evidence to show discrimination, we examine the claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Anderson v. Fort Hays State Univ*., No. 22-3141, 2023 WL 2945859, at *2 (10th Cir. Apr. 14, 2023) (citation omitted). *See also Garrett v. Hewlett-Packard Co*., 305 F.3d 1210, 1216 (10th Cir. 2002) (Title VII and ADEA circumstantial claims both employ *McDonnell Douglas* analysis.) "Under that framework, a plaintiff carries the initial burden of establishing a prima facie case of discrimination." *Anderson,* 2023 WL 2945859, at *2 (citing *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003)). "If the plaintiff establishes a prima facie case, at the second step, the burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* at *3 (quoting *Ford v. Jackson Nat'l Life Ins. Co*., 45 F.4th 1202, 1215 (10th Cir. 2022)). "If the employer makes this showing, at the final step, the burden shifts back to the plaintiff to demonstrate that the employer's explanations were pretextual—i.e., unworthy of belief." *Id.* (internal quotation marks omitted).

A prima facie case of discrimination is established if the plaintiff cites evidence that 1) she belongs to a protected class; 2) she suffered an adverse employment action; and 3) the circumstances give rise to an inference of discrimination. *Ibrahim v. Alliance for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021). The burden of establishing a prima facie case is not onerous and "can be shown by 'a variety of circumstances,' ranging from 'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus' to 'the timing or sequence of events leading to the employment action.'" *See Laber v. Austin*, No. 18-1351-JWB, 2022 WL 17361437, at *7 (D. Kan. Dec. 1, 2022) (quoting *Laul v. Los Alamos Nat'l Labs*., 714 F. App'x 832, 836 (10th Cir. 2017)). Here, with respect to both her sex and age claims, Plaintiff alleges that she was treated differently than males and those younger than 40 during her employment and with respect to her termination. Defendant argues that her allegations are not sufficient to allege a prima facie case of discrimination. The court agrees.

Plaintiff's factual allegations focus almost entirely on her medical conditions and related stress that was caused by her significant workload. At the end of these allegations, Plaintiff adds that she is a female and was over the age of 40 at her termination. Plaintiff, however, fails to make any factual allegations that would support a finding that she was placed on her PIP or terminated due to her sex or age.

In support of her sex discrimination claim, Plaintiff argues that she has alleged that she was treated differently, given less favorable assignments, and had increased work hours as compared to males who work for Defendants. (Doc. 17 at 9.) But the paragraphs cited by Plaintiff do not support these assertions. Rather, these paragraphs allege that the employees in her department were mostly women and that men were in a position of leadership. (Doc. 1-1 at ¶¶ 9–11.) Plaintiff is not asserting a claim of failure to promote based on her sex. The remaining paragraphs cited by

Plaintiff offer her no help either. (See Doc. 17 at 9.) Rather, her allegations simply show that she was overworked. However, there are no allegations that men working in her similar position were not required to work the same number of hours or that they had similar absences from work and were treated differently. In sum, Plaintiff has failed to plausibly allege that her differential treatment, placement on a PIP, or termination was the result of sex discrimination.

Her age discrimination claim also suffers the same fate. Plaintiff asserts that she has sufficiently alleged that her age was the but-for cause of her termination because no other employees were terminated and, after her termination, Defendants distributed her work to younger employees who were unable to perform. (Doc. 17 at 10.) This is not sufficient to state a claim of age discrimination. The fact that her account was given to younger employees in and of itself does not suggest that Defendants terminated Plaintiff due to her age. There are simply no facts to suggest that Defendants took action because of Plaintiff's age. Rather, Defendants' words and actions were all focused on Plaintiff's inability to do the work, whether that be as a result of her absences or her medical condition.

Defendants' motion to dismiss Plaintiff's claims of sex and age discrimination is granted.

**B. Disability Discrimination**

Next, Plaintiff asserts that she was discriminated due to her disability. The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination based on circumstantial evidence is also analyzed under the *McDonnell Douglas* burden-shifting framework. *Smothers v. Solvay Chemicals, Inc.,* 740 F.3d 530, 538 (10th Cir. 2014). Plaintiff must first establish a prima facie case of disability

discrimination by showing: (1) that she is disabled or regarded as disabled, as defined by the ADA, (2) that she is qualified to perform the essential functions of the job, and (3) she was terminated "under circumstances which give rise to an inference that the termination was based on [her] disability." *Id.* at 544. Defendants do not challenge the first two elements at this stage of the proceedings. (Doc. 12 at 11.) Defendants argue that Plaintiff has not sufficiently alleged the causation element. The court disagrees.

At this stage of the proceedings, Plaintiff has sufficiently alleged a claim of disability discrimination. Plaintiff alleges that Defendants perceived her as disabled based on her medical conditions that she suffers from, that she was qualified to perform her job and was doing so, and that she was disciplined and terminated as a result of her disability. Specifically, Plaintiff alleges that she told Defendants on multiple times that her workload was too much, that it was causing her conditions to flare up, and that she needed assistance. Defendants told her that they would assist her and then never did. Other individuals could not complete the work that Defendant had assigned to Plaintiff. And Plaintiff had years of positive performance reviews and was not disciplined until right before her termination. Instead of alleviating Plaintiff's work load, Defendants placed Plaintiff on a PIP for tardiness, despite never having been tardy, and then terminated her. They also cited her medical leave during the discussion of her PIP and told her that she was taking too much leave. These allegations are enough to state a plausible claim at this stage of the proceedings.

**C. Retaliation**

Finally, Plaintiff asserts a claim of retaliation in violation of Title VII, the ADEA, and the ADA. Plaintiff must establish a prima facie case of retaliation by showing 1) that she engaged in protected opposition to discrimination, 2) "that a reasonable employee would have found the challenged action materially adverse," and 3) "that a causal connection exists between the

protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

Defendants move for dismissal on these claims on the basis that Plaintiff has not pleaded that she engaged in protected activity. In response, Plaintiff appears to focus on her ADA retaliation claim but does not address her sex and age retaliation claims. Reviewing the allegations, Plaintiff fails to allege any facts that would support a claim of sex or age retaliation, as she did not engage in protected activity regarding those claims prior to her termination. Therefore, those claims are dismissed.

Turning to her ADA retaliation claim, Defendants argue that Plaintiff failed to sufficiently allege that she engaged in protected activity, such as requesting an accommodation. In response, Plaintiff asserts that she requested and took medical leave to treat her disability and that is sufficient to establish protected activity. (Doc. 17 at 14.) "Certain employee actions, such as filing an EEOC complaint, are indisputably protected activities under the ADA." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1187–88 (10th Cir. 2016). A request for accommodation can constitute protected activity. *Id.* Had Plaintiff requested leave to accommodate her medical conditions so that she could recover and then perform the essential functions of her position, it would be considered protected activity. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 676 (10th Cir. 2021). Reviewing the allegations, Plaintiff was given a PIP shortly after taking time off for her medical conditions. However, Plaintiff fails to elaborate upon the circumstances surrounding her requested leave. Based on the allegations, the court cannot conclude that Plaintiff requested accommodation in the form of leave in 2023.

However, Plaintiff requested disability leave in October 2022 and then returned from that leave in late December 2022. Although that leave occurred earlier in time, the allegations

surrounding that leave are sufficient to establish protected activity. Because that occurred several months prior to her termination, however, it would not be sufficient to establish causation. *See e.g., Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."); *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999) (noting that a three-month period is insufficient to establish causation). In such circumstances, a plaintiff needs to allege additional evidence to establish causation. *Id.* Here, Plaintiff does allege that she was told during the late September 2023 video call regarding her PIP that she was taking too much sick time. Plaintiff was then terminated shortly thereafter.

Based on the above, at this stage of the proceedings, the court finds that Plaintiff has sufficiently alleged a prima facie case of ADA retaliation.

**IV. Conclusion**

Defendants' motion to dismiss (Doc. 11) is GRANTED IN PART and DENIED IN PART. The motion is denied as to Plaintiff's claims of ADA discrimination and retaliation. It is granted as to the remaining claims.

IT IS SO ORDERED. Dated this 22nd day of July 2025.

__ s/ John Broomes__________
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE